ESTATE OF CARRIE L. JONES, DECEASED, ST. LOUIS UNION TRUST COMPANY, AND CHARLES M. POLK, EXECUTORS, PETITIONERS, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91831. Promulgated May 29, 1940.

*Charles M. Polk, Esq.*, for the petitioners.
*Arthur W. Carnduff, Esq.*, for the respondent.

OPINION.

MELLOTT: The respondent determined a deficiency in estate tax in the amount of $17,863.53. The sole question is whether or not the value of certain securities which Carrie L. Jones transferred to trustees during her lifetime is includable in her gross estate.

We find the facts to be as stipulated. For the purposes of this report the following summation will suffice:

George Prentise Jones died testate on August 26, 1918. His will, in so far as here pertinent, provided as follows:

I, Geo. Prentise Jones, of the City of St. Louis, State of Missouri, being of sound mind and disposing memory, do make, publish and declare this my last will and testament, hereby revoking all former wills by me made.

I. I give, devise and bequeath all of my estate, real, personal and mixed, of whatever kind or description, to my beloved wife, Carrie Louise Jones, to have and to hold for her life, and at her death, then to my beloved daughter, Ina Louise Jones, absolutely in fee.

II. It is, however, my desire that my said wife shall have power to dispose of said property and to do and act with the same as her own to devise, mortgage, or sell and deed the same in fee.

III. In the event of my wife remarrying, then it is my desire that all of the property undisposed of at that time be equally divided between my said wife and said daughter, in equal shares, each to hold the same absolutely.

The estate of George Prentise Jones was valued at $336,991.26. It contained, among other property, certain stocks and bonds, which were retained and held by his widow, and which on February 6, 1930, had a value of $87,476.25. Some of these stocks and bonds had changed in name or character from the original securities left by George Prentise Jones, due to capital reorganizations and change of name, but the securities held by the widow were either the original securities or were derived entirely from the original securities received by her under the will of her husband.

On February 6, 1930, Carrie L. Jones executed an indenture of trust and, "in consideration of the sum of One Dollar ($1.00) and for other good and valuable considerations", transferred to trustees named therein her securities of a value of $343,589.52, and in addition thereto the securities having a value of $87,476.25 received by her (and derived entirely from securities received by her) under the will of her husband. The trust indenture provided that the trustees were to hold, invest, and reinvest the property constituting the trust estate, and collect the income therefrom; that no investments or sales should be made without the approval of the grantor during her lifetime; that the trustees should have full power to determine whether any money or other property coming into their hands, concerning which there was any doubt, was principal or income; that the net income derived from the trust estate be paid over to the grantor, Carrie L. Jones, so long as she lived; and that upon her death, after making a distribution of $2,000 to a servant and placing $10,000 in trust for two grandchildren, the residue was to be paid over free from trust to the grantor's daughter, Frances Jones McNeely (referred to in will of father as Ina Louise Jones, and whose present name is Frances J. Vetterlein.) The grantor reserved the power to revoke the trust agreement in whole or in part and to free any sums of money, securities, or other property from the terms of the trust at any time during her lifetime.

On February 26, 1930, Carrie L. Jones executed her last will and testament and therein devised and bequeathed her entire estate (subject to the payment of debts) to her daughter, Frances J. McNeely, as her absolute property. The testatrix died on August 13, 1935.

Petitioners filed a Federal estate tax return for the estate of Carrie L. Jones on September 9, 1936, reporting the transfer of property valued at $343,589.52 and the distribution thereof less a certain $10,000 by the trustees under the trust indenture, and took a deduction of $16,679.48 as trustees' commissions at 5 percent on $333,589.52. In determining the deficiency here involved the respondent allowed as a deduction the amount paid to and retained by the trustees under the trust indenture as commissions. Petitioners, in the estate tax return, reported the transfer of securities of a value of $87,476.25 (their value on August 13, 1935, being stipulated to be the same as on February 6, 1930) but did not include them in the taxable estate, stating that Carrie L. Jones had only a life estate in them with remainder over to her daughter and that these securities were directly traceable to the estate of the husband of the decedent.

Under date of January 2, 1937, Frances Jones McNeely, the daughter of Carrie L. Jones, signed a letter drafted by her counsel and addressed to the trustees under the trust indenture of February 6, 1930, stating that she considered that she took, and she had elected to take, the securities of a value of $87,476.25 under the terms of the will and as a part of the estate of her father and not under the terms of the trust indenture or of the will of her mother.

In the statement attached to the notice of deficiency the respondent gave as the following reasons for including the value of the property here involved in the gross estate of the decedent:

The transfer by the decedent in 1930 subjects the value of the property transferred to inclusion in the decedent's gross estate under the provisions of section 302 (c) of the Revenue Act of 1926, as amended by section 803 of the Revenue Act of 1932, since the decedent reserved the income therefrom, and under the provisions of section 302 (d) of the Revenue Act of 1926, since she reserved the power to revoke.

The pertinent provisions of the revenue acts are set forth in the margin.[1]

---

[1] SEC. 302. [Rev. Act of 1926.] The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all the property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death. * * *

SEC. 803. FUTURE INTERESTS. [Rev. Act of 1932.]

(a) Section 302 (c) of the Revenue Act of 1926, as amended by the Joint Resolution of March 3, 1931, is amended to read as follows:

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or

Respondent contends that the will of George Prentise Jones gave his wife something more than a mere life estate in the property; that in addition to such an estate she became vested with powers to dispose, to do and act with the same as her own, to devise, to mortgage, and to sell and deed the same in fee; that, inasmuch as these powers had reference to personalty, her subsequent conveyance of the property was a valid transfer and not a mere nullity; and that the value of all the property transferred by her in trust in 1930, including the securities here involved, should be included in her taxable estate as an *inter vivos* transfer. In the alternative, respondent contends that even if the transfer in trust be disregarded entirely, the decedent "devised" the assets in question to her daughter by her will of February 26, 1930.

Petitioners contend that the decedent, under the will of her husband, received only a life estate in the residue of his property, with an added power of disposition; that as the life tenant she had the right to convey the property for value during her lifetime so far as might be reasonably necessary for her use, comfort, or enjoyment, but could not give it away; that the transfer of the property to the trustee was not authorized by the will of her husband and was void; that the decedent's daughter took a vested remainder in the estate of her father, under the terms of his will, subject to the power of disposition given her mother; and that the daughter took the remainder interest in the securities here involved directly from her father, pursuant to his will, and not as the appointee of her mother or under the terms of the trust instrument. Petitioners also contend that even if it be assumed that the decedent had the right to transfer the property in trust for herself, and to direct its distribution to her daughter upon her death, the daughter had the right to elect to take

---

distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title;"

(b) Section 302 (f) of the Revenue Act of 1926 is amended to read as follows:

"(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, or (2) by deed executed in contemplation of or intended to take effect in possession or enjoyment at or after his death, or (3) by deed under which he has retained for his life or any period not ascertainable without reference to his death or for any period which does not in fact end before his death (A) the possession or enjoyment of, or the right to the income from, the property, or (B) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth; and"

\*　　　\*　　　\*　　　\*　　　\*　　　\*.　　　.　　　\*

Sec. 302. [Rev. Act 1926.]

\*　　　\*　　　\*　　　\*　　　\*　　　\*

(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of the death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. \*　\*　\*

under the terms of the trust indenture or the terms of her father's will, and inasmuch as she elected to take under the will, the securities came to her from her father, and their value was not, therefore, taxable as a part of the decedent's estate. Petitioners further contend that the decedent did not exercise the power of disposition by will.

It is apparent from this statement of the contentions of the parties that they differ as to the title or interest the decedent acquired in the securities under the will of her husband. In determining this question effect must be given to the intention of the testator as the same may be gathered from the whole instrument. *Grace* v. *Perry*, 95 S. W. 875; 197 Mo. 550; *Coleman* v. *Haworth*, 8 S. W. (2d) 931. A study of the will convinces us that decedent's husband intended to give her a life estate, with the right to convey the property for value during her lifetime so far as might be reasonably necessary for her use, comfort, and enjoyment, or dispose of it by will, and that the power to dispose of all or any part of the property by gift *inter vivos* was neither intended nor given. This view finds support in a number of decisions of the courts of Missouri, where the transfer was made.

In *Lewis* v. *Pittman*, 101 Mo. 281; 14 S. W. 52, a testator gave all of his property to his wife, with the right and power in her to carry on his manufacturing business, or to dispose of the same, as to her may seem best, with the further qualification that whatever of the property she had remaining at her death should go to the children. The Supreme Court of Missouri held that under the will the wife took a life estate only in all her husband's property, and at her death the children took the property absolutely under their father's will, instead of under the will of their mother. The court, among other things, said:

* * * It may be conceded that a devise of an estate generally or indefinitely, with a power of disposition over it, carries a fee. *Green* v. *Sutton*, 50 Mo. 186. But there is a wide difference between that class of cases and those where there is a devise for life with a power of disposition. *Where an express life-estate is created, an added power of disposition does not convert the estate into a fee.* * * * If it is the clear intention from the whole will that the first taker is to have but a life-estate, then the added power of disposition will not convert the estate into one of absolute ownership. * * *. [Italics ours.]

In *Van Every* v. *McKay*, 53 S. W. (2d) 873, the decedent in his will gave all of his property to his wife "to have and to hold for her own use and benefit during her natural life, with full power to sell and dispose of the same, and to convey an absolute title therein, and to make such disposition of the proceeds as she may desire." The will provided that the proceeds of such property as the wife disposed of should remain and constitute part of decedent's estate during her lifetime, and, subject to her use and right to sell and dispose of same,

should descend to his daughter and son and their heirs. The court held that the will of the decedent gave his wife a life estate, with an added power of disposition, and a remainder in fee to the two children, and that the added power of disposition did not enlarge the life estate into a fee simple.

In *Cook* v. *Higgins*, 290 Mo. 402; 235 S. W. 807, a testator gave his widow "all of my property both personal and real estate to have full control, to sell and dispose of it as she may see fit giving her the right to make deeds to all or any of the real estate that I may be possessed of at my death and after my wife's death, whatever as may remain unexpended I do desire to be divided as follows", etc. The Supreme Court of Missouri held that the will created only a life estate in the wife with power of disposition, with the remainder over at her death to legatees named, and that the widow had no right to convey a part of the property in consideration of "one dollar and other valuable considerations", such deed being in effect a mere gift.

In *Burnet* v. *Burnet*, 148 S. W. 872, the Supreme Court of Missouri held that, where a life estate was created in the will, either by implication or in express words, with a remainder over, the life tenant had no power to defeat the remainder unless such power be expressly or impliedly given by the will. Inasmuch as the will provided that "whatever may be left undisposed of", at the death of the life tenant should go to her descendants, the court held that the life tenant had full power to dispose of the property for her use, comfort, and enjoyment, but did not have any power to give it away, and a deed of gift made by her of property belonging to the estate was invalid.

In *Holland* v. *Bogardus-Hill Drug Co.*, 284 S. W. 121, a testator provided in his will that the residue of his property should go to his wife for life, with power to dispose of it while she lived as testator could have done, and after her death the property remaining should be divided among his children. The Supreme Court of Missouri held that the wife acquired a life estate in the realty, and the children an equitable estate in remainder, subject to the widow's life estate and power of disposition, and that the widow could not give away the property.

In *Gibson* v. *Gibson*, 239 Mo. 490; 144 S. W. 770, a will disposed of the property of the testator to his widow, with power "to sell, control, manage, and dispose of it in the same way", that he might do if he were alive, and that it was his wish and desire, and he so willed, that at the death of the widow, "by will, or before if she so elected, that she shall divide among or settle upon" the children and grandchildren of the testator the property devised and bequeathed to her in designated shares. The Supreme Court of Missouri held that the words of the testator stated his intention,

without ambiguity, to give his wife a life estate, with full power of disposal for value, but that she had no power to give away the property or any part of it, even to the children, except that she might, during her life, if she so chose, divide the whole of the property among the children and grandchildren as provided in the will.

In *Garland* v. *Smith*, 164 Mo. 1; 64 S. W. 188, land was conveyed to a trustee for use of the grantor's wife for life, with "power to sell, mortgage, lease, or otherwise dispose of the same to such person or persons and for such uses and purposes as she may, by writing by her signed, direct and appoint" and the trustee was directed to execute the writings necessary to carry into effect this power when directed by her. If not disposed of by her, the trustee was directed to convey to the plaintiff on her death. She, without consideration, executed a warranty deed of the land to defendant, and also devised it to him in her will. The Supreme Court of Missouri held that the defendant acquired no title to the remainder under either the deed or the will, since the power to sell did not include a power to give away, and the authority to "appoint" and "otherwise dispose of" should be construed as a power to appoint or dispose of for her benefit and support.

Respondent on brief states that the inclusion of the value of the securities in the decedent's gross estate is not based on the exercise of the power (either by the trust instrument or by the will of Carrie L. Jones), but on the ground that she *took* the property under her plenary powers, and *transferred* it by revocable trust in 1930. He argues, "If the property were hers (to take and dispose of it) there is no question as to its inclusion in her taxable estate." We do not agree that the decedent under the will of her husband had the power to take the securities and dispose of them as she saw fit. The cases heretofore cited clearly hold that where an express life estate is created, an added power of disposal does not convert it into a fee or into one of absolute ownership. Under the will of the father the decedent's daughter, upon his death, acquired a vested remainder in his property, subject to be divested upon the happening of a condition subsequent, namely, the exercise by this decedent of the power of disposition contained in the father's will. *Von Behrn* v. *Stoeppelmann*, 286 Mo. 73; 226 S. W. 875; *Hamner* v. *Edmonds*, 327 Mo. 281; 36 S. W. (2d) 929; *Dunbar* v. *Sims*, 283 Mo. 356; 222 S. W. 838; *Grace* v. *Perry, supra;* 69 C. J. 654. Unless it can be said that this power of disposition was properly exercised, either by the creation of the trust on February 6, 1930, or by the decedent's will, we must of necessity hold that no interest in the securities in question passed from the decedent to her daughter at the time of her death, and that her daughter acquired her interest therein directly from her father pursuant to his will.

In our opinion the transfer in trust of February 6, 1930, in so far as the remainder interest was concerned, was not a proper exercise of the power of disposition contained in the will of decedent's husband. The power of disposition was limited to a disposition made for the benefit and support of the decedent. She was not vested with any power to give away the remainder interest, even though the gift was to the daughter, the holder of the vested remainder interest under the will of her father, and the transfer in trust for a nominal consideration was in effect a gift. *Cook* v. *Higgins, supra; Gibson* v. *Gibson, supra.* The attempted exercise of the power of disposition being invalid, it did not have the effect of divesting the daughter of the remainder interest vested in her under the will of her father, and upon the decedent's death this interest passed to her under the terms of his will. *Citizens Bank* v. *Fogelsong*, 31 S. W. (2d) 778; 326 Mo. 581.

Even if it be assumed that the trust instrument were a valid exercise of the decedent's power of disposition, the respondent still could not prevail because the appointment of her daughter to take the remainder, an interest she would take in default of appointment, was of no effect. "The attempt to execute the power was not effective, because it did nothing. The exercise of a power which leaves everything as it was before is a mere form, with no substance." *In re Lansing's Estate*, 182 N. Y. 238, 243; 74 N. E. 882, 884 (quoted with approval in *Helvering* v. *Grinnell*, 294 U. S. 153). This being so, the decedent's daughter received no benefit from the attempted exercise of the power. Cf. *James C. Webster et al., Executors*, 38 B. T. A. 273, 284; *Rothensies* v. *Fidelity-Philadelphia Trust Co.*, 112 Fed. (2d) 758.

There remains for consideration the respondent's alternative contention that even if the transfer in trust of February 6, 1930, be disregarded entirely, the decedent "devised", that is, she bequeathed the assets in question to her daughter by her will of February 26, 1930. No mention of any power of appointment conferred on her by the will of her husband was made in the will of the decedent, and no attempt was made in her will to show that she was attempting to exercise her power of appointment. Moreover, she could not pass title to the securities here involved to her daughter by will except through the exercise of the power of appointment. In *Papin* v. *Piednoir*, 205 Mo. 521, 536; 104 S. W. 63, the Supreme Court of Missouri said:

An execution of a power will be held to have been intended, "where there has been some reference in the will or other instrument to the power; or a reference to the property which is the subject on which it is to be executed; or where the provision in the will or other instrument executed by the donee of the

power would otherwise be ineffectual or a mere nullity; in other words it would have no operation except as an execution of the power." (*Blagge* v. *Miles*, 1 Story's U. S. Cir. Ct. Rep. 426; *Lee* v. *Simpson*, 134 U. S. 572; *Turner* v. *Timberlake*, 53 Mo. 371.)

Not only was there no reference to the power in the will of the decedent, but she specifically provided therein that she gave, devised, and bequeathed to her daughter "my entire estate of whatever it may consist and wherever situate, belonging to me at the time of my death." The securities here in question did not belong to the decedent at the time of her death. It is our conclusion that the decedent did not exercise the power of appointment by will, and that no interest in the securities passed to her daughter under its terms.

In view of the foregoing we hold that the respondent erred in determining that the value of the securities, $87,476.25, was includable in the gross estate of the decedent. Sections 302 (c) and 302 (d), *supra*, can not be applied because there was no shifting of the economic benefits in the property from the decedent to her daughter, and section 302 (f), *supra*, can not be applied because there was no shifting of the economic benefits through the exercise of a power of appointment.

At the hearing it was indicated both parties were of the opinion the executors had deducted, and the Commissioner had allowed, commissions of 5 percent upon $421,065.77 ($333,589.52 + $87,476.25). If so, then it would be proper for us to order a recomputation of the deficiency; for the maximum amount which should be allowed (under the stipulation of the parties) is 5 percent upon $333,589.52 or $16,679.48. An examination of the return, however, indicates that this was the amount claimed and allowed. Therefore,

*Judgment will be entered for the petitioner.*